UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONNA AVVENTO and ) | CIVIL ACTION NO. |
| KEITH BORRELLI ) | |
|     Plaintiffs ) | |
| ) | |
| v. ) | |
| ) | |
| BARBERINO CAR COUNTRY, LLC d/b/a ) | |
| BARBERINO MITSUBISHI, ) | |
| THE HARTFORD AUTO GROUP, INC. d/b/a ) | JURY TRIAL DEMANDED |
| BARBERINO MITSUBISHI-HARTFORD, AND ) | |
| THE BARBERINO BROTHERS, INC. ) | |
|     Defendants ) | |
| ) | APRIL 3, 2018 |

## COMPLAINT

### I.    INTRODUCTION

1.    This is a suit brought by two consumers regarding the purchase and sale of a motor vehicle. Plaintiffs bring this action to recover actual damages, statutory damages, punitive damages and reasonable attorney's fees and costs from Defendants Barberino Car Country, LLC d/b/a Barberino Mitsubishi ("Barberino Mitsubishi"), The Hartford Auto Group, Inc. d/b/a Barberino Mitsubishi-Hartford ("HAG") and Barberino Brothers, Inc. ("Barberino Nissan", collectively "Defendants").  The Plaintiff claims that Barberino Mitsubishi violated the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* ("TILA"); the Connecticut Retail Installment Sales Finance Act, Conn. Gen. Stat. § 36a-770 *et seq.* ("RISFA"); the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA"); the Credit Repair Organization Act ("CROA"), 15 U.S.C. § 1679 *et seq.* (the "CROA"); the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA"); breach of express warranty; and Conn. Gen. Stat. § 17b-450. HAG is

liable to Plaintiffs under a theory of successor liability and Barberino Nissan is liable as the "alter ego" of Barberino Mitsubishi.

## II.    PARTIES

2.      Plaintiff Donna Avvento ("Avvento") is a natural person residing in Plantsville, Connecticut.

3.      Plaintiff Keith Borrelli ("Borrelli", collectively "Plaintiffs") is a natural person residing in Brooklyn, New York.

4.      Defendant Barberino Mitsubishi is a Connecticut limited liability company located in Watertown, Connecticut.

5.      Defendant HAG is a Connecticut limited liability company located in Hartford, Connecticut.

6.      Defendant Barberino Nissan is a Connecticut stock corporation located in Wallingford, Connecticut.

## III.    JURISDICTION

7.      Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(e), 15 U.S.C. § 1691e(f) and 28 U.S.C. § 1331.  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

8.      This court has jurisdiction over the Defendants, because they are organized under the laws of the state of Connecticut and regularly conduct business in this state.

9.      Venue in this court is proper because the claims involve a transaction that occurred in Connecticut.

2

## IV.   FACTUAL ALLEGATIONS

### a. Barberino Dealerships' Sales Tactics

10.     The practice of car dealerships setting disadvantageous pricing and credit terms for racial minorities, women and the young and old has been extensively studied and persists within the industry even when dealerships undertake the conduct without explicit animus. *See Race and Gender Discrimination in Bargaining for a New Car;* Ian Ayres and Peter Siegelman, The American Economic Review, Vol. 85, No. 3. (Jun., 1995), pp. 304-321.

11.     Research suggests that the dealerships' disparate treatment of women and racial minorities may be caused by dealers' statistical inferences about consumers' reservation prices.

12.     In May of 2017, Barberino Mitsubishi, HAG and Barberino Brothers were among several dealerships that had common ownership and management (the "Barberino Dealerships").

13.     The Barberino Dealerships shared staff amongst their dealerships and utilized the same website and without reimbursement for usage of intellectual property.

14.     Employees of Barberino dealerships consolidated payroll from a single Barberino Entity, Barberino Nissan, and paid their employees through that entity.

15.     Barberino Nissan provided other "back office" including, but not limited to, reviewing transactions and interacting with lenders to support to Barberino Mitsubishi and HAG without reimbursement for those services.

16.     Barberino Dealerships shared capital and treated individual dealership's profit and loss as part of the entire Barberino Dealership singular form.

17.     On information and belief, Barberino Dealerships shared and transferred inventory amongst their several dealerships without providing reimbursement to the others for the vehicles.

18.     Barberino Mitsubishi functioned as an alter ego of Barberino Nissan.

19.     Barberino Mitsubishi ceased doing business at the end of July or in early August 2017.

20.     Barberino Mitsubishi directed its customers to HAG upon cessation of business as it was a manufacturer-authorized Mitsubishi dealership and part of the same "family" of dealerships.

21.     Prior to Barberino Mitsubishi's closing, it began writing purchase orders and retail installment sales contract utilizing the HAG business name and/or address in preparation for its closure.

22.     HAG is a successor in interest to Barberino Mitsubishi as it utilizes much of the same staff and management as Barberino Mitsubishi, has directed Barberino Mitsubishi customers to HAG, HAG has relied upon the good will of Barberino Mitsubishi and HAG held itself out in public statements as the successor to Barberino Mitsubishi.

23.     Barberino Dealerships engage in sales tactics wherein they target women, racial and ethnic minorities, elderly persons and young people for discrimination with respect to the extension of credit and the setting of credit terms.

4

24.     Barberino Mitsubishi, HAG and Barberino Nissan are both defined as a "creditor" pursuant to the ECOA. See 12 C.F.R. § 1002.2(l); *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 578 (6th Cir. 2016)

25.     Barberino Dealerships regularly participate in the credit decision through setting the terms of credit by, *inter alia*, setting the price of the vehicle, selecting which vehicle to sell, and selecting the price for add-ons associated with the transaction.

26.     On information and belief, Barberino Dealerships also set the interest rate for some or all of the vehicles they sell.

27.     It is the Barberino Dealership's business practice to "size up" customers and, for those perceived as vulnerable and gullible (known internally at Barberino Dealerships as "ducks", as in the colloquialism "sitting ducks"), to charge them higher prices (relative to sophisticated buyers) and to "pack" their contracts with extras of little value compared to their cost.

28.     Barberino Dealerships determine whether or not a customer is a "duck" on the basis of whether or not a customer is a member of a protected class, such as an elderly person, a woman or a member of a racial or ethnic minority.

29.     Barberino Dealerships refer to buyers who appear sophisticated and informed, including many middle-aged, white men, as "beaters" and they do not attempt to take advantage of them with the above described sales tactics.

30.     Barberino Dealerships refer to Indian-American customers as "dots", presumably in reference to the Bindi worn by some Hindu and Jain women.  When Indian-American customers come to Barberino Dealerships, the sales staff pretends to

be busy and ignores them because of their perception that they are sophisticated customers and will not be able take advantage of them.

31.     Barberino Dealerships refer to Asian-American customers as "chinks", in reference to the slur used against Asian-Americans.  Barberino Dealerships' tactic with Asian-American customers is to increase the price of the vehicle, but then add digits associated with luck in Chinese numerology in order to entice the customer into the purchase.

32.     When Barberino Dealerships determine a customer to be a "duck", one frequently utilized tactic is to show that customer a single vehicle on their lot and tell them that this is only vehicle for which they are "approved" or that it is the only vehicle available for them to purchase.

33.     Barberino Dealerships use this tactic, because it allows them to off-load undesirable vehicles to "ducks", usually at prices far above their value.

34.     Barberino Dealerships will not permit that customer to apply for credit for any other vehicles on the lot.

35.     Barberino Dealerships also routinely remove the window stickers (known as Monroney stickers) from new cars being shown to "ducks" so that they are able to set the vehicle's price, add-ons and financing terms without the customer having reference to what other individuals, who are not "ducks", would be charged for the same vehicle.

36.     By removing any reference to the price on the vehicle, customers are also prevented from being able to compare the vehicle being offered for sale to them to price of other vehicles on the lot or ascertain the Manufacturer's Suggested Retail Price ("MSRP") for the vehicle.

6

37.     It is the practice of Barberino Dealerships to set the asking price for a vehicle based not upon the MSRP or advertised price when selling a vehicle to a person labeled as a "duck", but upon the maximum amount or nearly maximum amount for which a customer is approved by a lender.

38.     Frequently, Barberino Dealerships engage in credit application fraud so that customer's income is grossly overstated and the customer is approved for a much greater amount than they can actually afford.

39.     On information and belief, Barberino Dealerships increase the dealer mark-up on the interest rate offered by lenders to a greater amount for elderly customers than for younger customers.

### b. Plaintiffs' Transaction

40.     In early May 2017, Avvento went to Barberino Mitsubishi to look for a vehicle for herself and her adult daughter.

41.     Avvento is older than 62 years of age.

42.     Avvento's daughter has Down's syndrome, and Avvento is her caregiver.

43.     Avvento sought a sports utility vehicle in order to transport herself and her daughter.

44.     Avvento met a salesman, Morris Morton ("Morton"), who showed her a single vehicle: a new 2017 Mitsubishi Outlander Sport (the "Vehicle").

45.     Morton, an agent of Barberino Mitsubishi, had determined that Avvento was a "duck" on account of her age and gender.  Morton made this determination before he had any substantive conversation with her or had obtained her credit history.

7

46.     Avvento told Morton that the Vehicle was too small and that she desired a larger Mitsubishi Outlander, but Morton told her that was the only Vehicle available to her.

47.     Avvento also told Morton that she wanted a vehicle with leather seats, because they are easier to clean, and that the Vehicle had cloth seats.

48.     Morton told Avvento that the seats would be switched to leather at no additional cost.

49.     The Vehicle did not have a Monroney Sticker displayed.

50.     The Manufacturer's Suggested Retail Price ("MSRP") for the Vehicle was $25,395.

51.     Avvento filled out a credit application, but was told by Barberino Mitsubishi that they would not extent credit to her without a co-signer.

52.     Avvento did not receive any rejection letters or other documentation indicating why she was turned down for credit individually.

53.     There were many other vehicles on the Barberino lot for sale at that time, which were lower in price and Avvento could afford without a co-signer.  These other vehicles were outfitted with the features Avvento desired and of a larger size.

54.     Morton steered Avvento towards the Vehicle, because he considered her to be an unsophisticated consumer on account of her gender and age and sought to sell her an undesirable vehicle with disadvantageous credit and price terms.

55.     Approximately one week later, Avvento returned to Barberino Mitsubishi with Borrelli, who is her boyfriend.

56.     Plaintiffs both filled out credit applications, but no other paperwork at that time.

57.     On information and belief, Barberino Mitsubishi submitted Plaintiffs' credit applications falsely listing Plaintiffs as having the same address in Plantsville, Connecticut.

58.     Avvento, by herself, returned to Baberino Mitsubishi on May 15, 2017 and completed paperwork for the purchase of the Vehicle including a Retail Installment Sales Contract ("Contract 1") and purchase order.

59.     Plaintiffs and Barberino Mitsubishi agreed to monthly payments of $452 per month for 75 months.

60.     Barberino Mitsubishi sent the paperwork, including Contract 1, overnight to Borrelli via Federal Express for his signature.

61.     Borrelli signed the paperwork and sent it back to Barberino Mitsubishi on or about May 17, 2017.

62.     Barberino called Avvento and/or Borrelli a short time later and falsely told them that the paperwork had been lost in the mail.  Therefore, they needed to return to Barberino Mitsubishi to execute the documents again.

63.     Plaintiffs returned to Barberino Mitsubishi on or about May 22, 2017.

64.     Barberino Mitsubishi presented Plaintiffs with a new Retail Installment Sales Contract ("Contract 2") backdated to May 15, 2017.

65.     Contract 2 listed an increased monthly payment of $487 for 75 months. The cash price for the Vehicle was $28,900, $3,505 above the MSRP.

66.   Avvento questioned the increase and was told that this increase was due to the leather seats, despite the original representation that they would be swapped for no additional cost.

67.   Avvento complained that the leather seats were represented to be installed at no cost, but she was told Barberino Mitsubishi had decided to increase the price and there was nothing she could do about it, because she had committed to the sale.

68.   Plaintiffs were not provided with copies of the purchase order or Contract 2.

69.   Avvento eventually received a copy of Contract 2 from the assignee, Capital One Auto Finance, several months after its execution.

70.   Contract 1 and Contract 2 erroneously list Plaintiffs as having the same address in Plantsville, Connecticut despite Borrelli informing them of his Brooklyn, New York address and Barberino Mitsubishi having knowledge of that address by sending paperwork there.

71.   Barberino Mitsubishi listed Borrelli as the primary purchaser on both Contracts despite Plaintiffs' intention for Avvento to be the primary owner.

72.   Throughout this transaction, Borrelli lacked a valid driver's license.

73.   On information and belief, Barberino Mitsubishi intentionally misrepresented Borrelli's address to prospective finance companies in order to induce them to accept assignment of the Contract as the Plaintiffs living together would be more attractive to finance companies.

74.   Avvento took delivery of the Vehicle in early June.

10

75.     Upon delivery, Avvento discovered that the seats were still cloth.

76.     Avvento requested a refund for the difference.

77.     Barberino Mitsubishi told Avvento that they would provide a $1,400 refund.

78.     In early July 2017, Avvento received a check for $1,049 from Barberino Mitsubishi, less than the amount promised for the refund.

79.     Avvento owned a 2011 Mitsubishi Outlander that she wished to trade-in towards the purchase of the Vehicle.

80.     Barberino Mitsubishi told her that they would not accept her trade-in vehicle.

81.     Avvento spoke with a "Ryan" in Barberino Mitsubishi's finance department who told her "on the QT, let the bank repossess it." Ryan told Avvento that, after she signed the paperwork, he would further explain how to solve the problem of the outstanding payments.

82.     After she signed the paperwork, Ryan explained to Avvento that she should wait until she takes delivery of the new vehicle and then stop making payments on the 2011 Outlander.  Then, someone from the bank would come and take her car and she would not even notice.  That would be the end of her responsibility for the vehicle.

83.     Ryan failed to explain that after the finance company disposed of her vehicle, Avvento would probably owe a deficiency.  Avvento was unaware that this would happen and would not have followed Ryan's advice had she known.

84.     Avvento relied on Ryan's advice and stopped making payments her 2011 Outlander after she took delivery of the Vehicle.

85.     This representation was part of a broader business practice by the Barberino Dealerships to "kick the trade" but persuading consumers to permit their trade-ins to be repossessed, frequently by deceiving them regarding the consequences of those actions, which consequences include credit harm and liability for deficiencies.

86.     Santander Consumer USA repossessed the 2011 Outlander from Avvento in or around July 2017.

87.     Avvento owes an approximately $5,000 deficiency on the 2011 Outlander.

88.     Barberino Nissan is liable for Plaintiffs' claims as the "alter ego" of Barberino Mitsubishi.

89.     HAG is liable for Plaintiffs' claims as successors in interest to Barberino Mitubishi.

## V.     CAUSES OF ACTION

## COUNT ONE – TRUTH IN LENDING ACT (BOTH PLAINTIFFS)

90.     Defendants violated TILA and Regulation Z by failing to provide the proper disclosures to Plaintiffs in a form they could keep at the time of execution.

91.     Defendants are separately liable for Contract 1 and Contract 2 as they represent different and distinct contracts.

92.     Defendants are liable to Plaintiffs for their actual damages pursuant to 15 U.S.C. § 1640(a)(1), plus statutory damages of $2,000, plus a reasonable attorney's fee pursuant to 15 U.S.C. § 1640(a)(3).

**COUNT TWO – EQUAL CREDIT OPPORTUNITY ACT (AVVENTO ONLY)**

93.     On account of her sex and age, elderly as defined by 12 C.F.R. §
1002.2(o), Defendants steered Avvento towards the Vehicle and told her that it was the
only Vehicle for which she could be approved for financing and set disadvantageous
credit terms that it would not have been extended to a person who were not members of
the same protected classes as Avvento.

94.     Barberino Mitsubishi discriminated against Plaintiff as that term is defined
by 14 C.F.R. § 1002(n), "treat[ing] an applicant less favorably than other applicants."

95.     On account of her sex and age, Defendants discouraged Avvento from
applying for credit without a co-signer.

96.     Defendants violated 15 U.S.C. § 1691(a)(1) and 12 C.F.R. §1002.4(a).
Defendants took adverse action against Avvento as defined in U.S.C. § 1691d(6) of the
ECOA when they declined to extend credit to Avvento without a co-signer and by
discouraging her from applying for credit on less expensive vehicles and by financing
the transaction on terms that would have been offered to someone not in her class.

97.     In violation of 15 U.S.C. § 1691d(1) and (2) of the ECOA, Defendants
failed to provide Avvento with written notification as to the reasons for the adverse
action and failed to provide them with written notification of (a) Avvento's right to a
statement of reasons within thirty days after receipt by the creditor of a request made
within sixty days after such notification and (b) the identity of the person or office from
which such a statement may be obtained.

98.     The acts complained herein were done by Defendants intentionally,
purposefully and/or in reckless disregard of Plaintiff's rights.

99.    Defendants are liable to Plaintiff for actual damages, punitive damages up to $10,000, attorney's fees and costs.

## COUNT THREE – CREDIT REPAIR ORGANIZATIONS ACT (BOTH PLAINTIFFS)

100.    By providing false information to Capital One Auto Finance in connection with Plaintiffs' credit applications, Barberino Mitsubishi violated the CROA, 15 U.S.C. § 1679b(a)(1), which prohibits any person from making any statement that is untrue or misleading with respect to any consumer's credit worthiness, credit standing, or credit capacity to any person to whom the consumer has applied or is applying for an extension of credit.

101.    Barberino Mitsubishi is liable to Plaintiffs for damages, punitive damages, and attorney's fees pursuant to 15 U.S.C. § 1679g.

## COUNT FOUR – CONNECTICUT RETAIL INSTALLMENT SALES FINANCE ACT (BOTH PLAINTIFFS)

102.    Defendants violated RISFA, Conn. Gen. Stat. § 36a-770 by failing to provide Plaintiffs with copies of Contracts 1 or 2 and falsely stating material information on the faces of Contract 1 and 2.

103.    Defendants' violations of RISFA were willful within the meaning of Conn. Gen. Stat. § 36a-786.

## COUNT FIVE - CONNECTICUT UNFAIR TRADE PRACTICES ACT (BOTH PLAINTIFFS)

104.    Defendants violated CUTPA in the following ways:

   a.    The violations of TILA as aforesaid;

14

b.   The violations of ECOA as aforesaid;

c.   The violations of CROA as aforesaid;

d.   The violations of RISFA as aforesaid;

e.   The failure to post a Monroney sticker on the Vehicle;

f.   They sold the Vehicle for $3,505 more than the MSRP without affixing a supplemental sticker to the Monroney sticker indicating that the price was increased over MSRP;

g.   They sold the Vehicle for more than the advertised price, a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(1), which prohibits dealerships from failing to sell vehicles for the advertised price;

h.   They sold the Vehicle for more than the original agreed upon price in Contract 1, a violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(1);

i.   They destroyed or otherwise concealed Contract 1 after it was executed by both Plaintiffs as a pretext to increasing the purchase price of the Vehicle;

j.   They increased the purchase price of the Vehicle after representing that it would not charge more for leather seats on the Vehicle;

k.   They induced Avvento to cause the lender to repossess her 2011 Outlander without informing her that she would still owe money on the vehicle and that her credit score would be damaged due to the inclusion of a repossession;

l.    They failed to return the entire refund amount for the leather seats to Plaintiffs;

105.   Defendants' conduct, as aforedescribed, was deceptive, unethical, unscrupulous and unfair and in violation of CUTPA, and they have caused Plaintiffs to suffer ascertainable losses and damages in that they paid more than the advertised prices for the vehicles, they paid higher sales tax charges, they paid a higher amount for the Vehicle than the original amount in Contract 1, Avvento has a deficiency for her 2011 Outlander and Avvento has suffered a negative impact on her credit history, and Plaintiffs did not receive the entire promised refund for the seats.

106.   Defendants are liable to the Plaintiffs for their actual damages plus punitive damages and a reasonable attorney's fee and costs.

## COUNT SIX – BREACH OF EXPRESS WARRANTY (BOTH PLAINTIFFS)

107.   Defendants made affirmations of fact or promise relating to the Vehicle that became part of the basis of the bargain and that created express warranties pursuant to Conn. Gen. Stat. § 42a-2-313(a).

108.   Specifically, Defendants represented that the Vehicle would have leather seats installed for no extra charge.

109.   The installation of leather seats in the Vehicle at no additional charge was a promise that became part of the basis of the bargain and impelled Plaintiffs to purchase the Vehicle.

110.   Defendants failed to install the leather seats on the Vehicle even after it surreptitiously increased the purchase price due to their promised installation.

111.   Defendants have breached its express warranty as aforedescribed.

16

112.    Defendants failed to provide a full refund for the amount it increased the price for the leather seats.

113.    Defendants' breach of express warranties was tortious in nature, in bad faith, was wanton and malicious, outrageous, and was undertaken with bad motive and with a reckless indifference to the Plaintiffs' interests and the injury that they sustained.

114.    Defendants are liable to Plaintiffs for their damages, including common law punitive damages.

**COUNT SEVEN – VIOLATION OF CONN. GEN. STAT. § 17B-462 (AVVENTO ONLY)**

115.    Avvento is over 60 years of age and defined as "elderly" pursuant to Conn. Gen. Stat. § 17b-450.

116.    Defendants exploited Avvento as that term is defined by Gen. Stat. § 17b-450 by taking advantage of Avvento for monetary gain in violation of Conn. Gen. Stat. § 17b-462(a) by way of the aforedescribed conduct.

117.    Defendants are liable to Avvento for damages and a reasonable attorney's fee.

**COUNT EIGHT – BREACH OF CONTRACT (BOTH PLAINTIFFS)**

118.    Defendants entered into Contract 1 with Plaintiffs for the sale of the Vehicle at $452 per month for 75 months.

119.    Contract 1 was executed by both Plaintiffs and they were ready and willing to perform under the terms of said contract.

120.    Defendants breached Contract 1 when it unilaterally increased the monthly payments to $487 per month for 75 months and failed to sell the Vehicle for $452 per month.

121.    Defendants are liable to Plaintiffs for their damages.

WHEREFORE, Plaintiffs claim the following relief:

- Statutory damages;

- Actual damages;

- Punitive damages;

- Attorney's fees and costs; and

- Any other relief as deemed just and equitable by this court.

PLAINTIFFS, DONNA AVVENTO AND
KEITH BORRELLI

By: _____
Daniel S. Blinn (ct02188)
dblinn@consumerlawgroup.com
Brendan L. Mahoney (ct29839)
bmahoney@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax. (860) 571-7457